IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RUSSELL SCIVALLY and ANGIE SCIVALLY,** ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action Number **5:11-cv-01452-AKK** |
| **CITIMORTGAGE, INC.,** *et al.*, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion to Remand, (doc.12), due to Defendants' purported failure to sufficiently demonstrate diversity jurisdiction. After review of the parties' briefs and the relevant law, the Court hereby **DENIES** the motion. Since Plaintiffs have not responded to Defendants' motion to dismiss, (doc. 16), and perhaps because of their belief that the court would grant their motion to remand **the court has decided to give Plaintiffs until 5 p.m. on August 16, 2011, to respond to Defendants' motion to dismiss**. The court will consider a failure to respond as an indication that Plaintiffs do not oppose the motion.

### I. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). By federal statute, "district courts . . . have

1

original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between (1) citizens of different States . . . ." 28 U.S.C. § 1332(a).  Additionally, federal law provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

Consistent with the limited nature of federal jurisdiction, a party seeking removal bears the burden of establishing the jurisdictional requirements. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007). Thus, it falls to the removing party to establish the citizenship of the parties. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC,* 374 F.3d 1020, 1022. Likewise, "[w]here . . . the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (internal citations and quotation marks omitted). Furthermore, "[d]efendant's right to remove and [p]laintiff's right to choose his forum are not on equal footing . . . [therefore,] where plaintiff and defendant clash about jurisdiction, uncertainties are to be resolved in favor of

remand." *Burns v. Winsor Ins. Co.* 31 F.3d 1092, 1905 (11th Cir. 1994); *see Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006) ("The rule of construing removal statutes strictly and resolving doubts in favor of remand . . . is well-established.").

Nonetheless, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). Rather, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* (internal citations and quotation marks omitted). However, when making these deductions, the court must focus its analysis on the amount in controversy at the time of removal, and not on later amendments or clarifications. *See Nelson v. Whirlpool Corp.*, 727 F. Supp. 2d.1294, 1301(S.D. Ala. 2010) ("Post-removal elimination of [jurisdictional] essentials does not deprive the federal court of subject matter jurisdiction.")

## II. BACKGROUND

Plaintiffs filed their Complaint on April 5, 2011, in the Circuit Court of Jackson County, Alabama, (doc. 1-1.), based upon their February 9, 2007, loan

agreement with Consumer First Mortgage, Inc.  Doc.1 ¶ 2. The mortgage gave Consumer First a security interest in Plaintiffs' property, located at 365 County Road 26, Scottsboro, Alabama, in exchange for a loan of $138,852. Doc. 18-1 ¶ 5. This property had an approximate value of $144,000 in 2007. Doc. 1 ¶ 11. Sometime after Plaintiffs and Consumer First reached this agreement, Kim Krakoviak, Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"), transferred Consumer First's security interest to CitiMortgage, Inc. ("Citi"). *Id.* ¶ 1. Subsequently, Citi removed funds from an escrow account to purchase additional flood insurance on the property against Plaintiffs' wishes. Doc. 14 ¶ 8.  Then, in February 2011, Citi began foreclosure procedures, triggering Plaintiffs' suit.  *Id.* ¶ 12.

The initial Complaint pled several state law claims including fraud, breach of contract, and contractual invalidity. *Id.* ¶¶ 43-60. Additionally, Plaintiffs alleged a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. Doc. 1 ¶ 7. Plaintiffs sought an unspecified amount of compensatory and punitive damages, in addition to injunctive relief.[1] Doc. 14 ¶¶ a - f.

---

[1] In addition to their original complaint, Plaintiffs filed a motion for a Temporary Restraining Order on the foreclosure proceedings. However, because Defendants subsequently agreed to forestall any such proceeding until the resolution of this litigation, the Court entered an order finding Plaintiffs' motion moot.

On May 27, 2011, Defendants removed the case to this court pursuant to 28 U.S.C. § 1441 (a) and (b), in part, on federal jurisdiction grounds because the Plaintiffs' FDCPA claim "[arose] under the Constitution, laws or treaties of the United States."  Doc. 1 ¶¶ 4, 7. Also, Defendants claimed this court has diversity jurisdiction because Defendants Citi, MERS, and Krakoviak are incorporated in, headquartered in, or residents of New York, Virginia, Delaware, and Missouri respectively, and they alleged that Plaintiffs are both residents of Alabama. Doc. 18 Exhibits A-D. Finally, Defendants claimed the amount in controversy exceeds $75,000 because of the $138,852 loan secured by the mortgage. Doc. 1 ¶ 8.

Defendants moved to dismiss shortly thereafter. Doc. 5.  The court gave Plaintiffs, who are *pro se* litigants, leave to file an amended complaint that complied with the federal pleading standards, (doc.10), but Plaintiffs filed instead a motion to the dismiss their FDCPA claim and asked this court to remand the remaining state law claims back to state court. Doc. 12 ¶ 10.  Plaintiffs alleged that in light of their decision to dismiss their FDCPA claim, remand is warranted because Defendants failed to adequately establish the citizenship of all of the parties, and because "the heart of this controversy is a break in the chain of title", which will "assuredly NEVER reach the amount of $75,000." Doc. 12 ¶¶ 5-8(emphasis by Plaintiffs).

### III. ANALYSIS

The party invoking federal jurisdiction has the burden of establishing diversity of citizenship, and if jurisdiction is properly challenged, that party also bears the burden of proof. *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975).[2] A party can meet this burden by offering affidavits and other evidence that establishes the citizenship of all of the named parties. *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1282 (M.D. Ala. July 30, 1998) (ruling that removing party's evidentiary submissions were sufficient to establish the citizenship of all of the parties, and thus exercise of jurisdiction would be proper). For a corporation, such evidence must show "any State by which it has been incorporated and the State where it has its principle place of business." *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1185 (2010). Likewise, for individuals, courts determine citizenship based upon domicile, i.e. "a person's . . . true, fixed, and permanent home and principle establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1947); *Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003). Relevant factors in a

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth circuit handed down prior to the close of business on September 30, 1981.

domicile determination often include a party's home ownership, driver's license, voter registration, and location of employment. *Rayfield v. Nat'l Auction Grp., Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995). However, no single factor is dispositive because the court employs a totality of the circumstances analysis. *Kasberger*, 273 F. Supp. 2d at 1227.

Turning now to the facts here, the court disagrees with Plaintiffs' contention that Defendants failed to present sufficient evidence to prove citizenship. Doc. 12 ¶¶ 5, 6. With regard to the two corporate Defendants, Citi and MERS, the most helpful evidentiary submissions are the Business Entity Details published by the Alabama Secretary of State. Docs. 18-2, 18-3. Under Entity Type, both Citi and MERS are listed as foreign corporations. *Id*. These reports also list the Place of Formation (Incorporation) and Principle Mailing Address (Principle Place of Business) of Citi as New York and Missouri, and that of MERS as Delaware and Virginia. *Id*. In addition, Defendant Krakoviak provided a sworn declaration in which she attests that she maintains a home, holds a valid driver's license, and works in Missouri. Doc. 18-1 ¶ 2. When taken together, contrary to Plaintiffs' contention, this evidence shows that none of the Defendants are citizens of Alabama.

Further analysis is warranted, however, because Plaintiffs also contest their own citizenship, (doc. 12 ¶ 6), and assert correctly that the mere allegations of residence found in the removal are insufficient to establish their citizenship. *Tucker v. Thomasville Toyota*, 623 F. Supp. 2d 1378, 1380 (M.D. Ga. 2008) ("A party must plead citizenship distinctly and affirmatively . . . because domicile is not always the same as residence, as a person may reside in one place but be domiciled elsewhere."). However, a party may simply plead diversity for removal, and subsequently present proof of citizenship if there is a jurisdictional challenge. *See Ray,* 519 F.2d at 1082. This is precisely the case here and, as shown below, Defendants have met their burden of proof.

To support their contention that complete diversity exists, Defendants offer the loan agreement and the sworn declaration of their attorney as proof of Plaintiffs' domicile. Doc. 18-1, 4. The evidence indicates that Plaintiffs have lived in Alabama for at least twenty years, that Russell Scivally currently has an active Alabama driver's license, and that the only property owned by either Plaintiff is in Alabama. *Id*. Additionally, the Residential Loan Agreement that Plaintiffs signed, which forms the basis of their claims, states that the "Borrower shall, occupy, establish, and use the Property as *Borrower's principle residence*." (Doc. 18-1, Exhibit B to Exhibit A, at 3 ¶ 5) (emphasis added). This agreement

8

alone may sufficiently establish Plaintiffs' domicile, and when viewed in conjunction with the other evidence Defendants submitted, it is clear that Plaintiffs are citizens of Alabama.  Since Defendants are not citizens of Alabama, the parties are completely diverse.

The court turns now to the amount in controversy requirement. The parties disagree on the valuation method— Plaintiffs contend amount in controversy is the amount they are in default and Defendants contend it is the value of the loan. Federal courts in Alabama rely on one of the following four valuations to determine the amount in controversy in cases involving mortgage disputes or foreclosure sales:  (1) the value of the property; (2) the amount on the mortgage (i.e., the balance on the promissory note secured by the mortgage); (3) the value of a temporary delay of a foreclosure; or (4) a plaintiff's equity in the real estate. *Brown v. Citimortage, Inc.*, No.  10-0709-KD-M, 2011 WL 1059206 at *3 (S.D. Ala. March 4, 2011) (citing *Mapp v. Deutsche Bank Nat'l. Trust Co.*, No.  3:08-cv-695-WKW, 2009 WL 3664118, at * 1 (M.D. Ala. Oct. 28, 2009)).  While courts disagree on which method best shows the amount in controversy, the recent trend is to use the full value of the property in cases involving either permanent injunctions or challenges to the validity of a mortgage.  *See Brown,* 2011 WL 1059206, at *5; *Mapp,* 2009 WL 3664118, at *4; *see also Macks v.  U.S.  Bank*

*Nat'l. Ass'n.,* No. 2:10cv357-MHT, 2010 WL 2976200, at *2 (M.D. Ala. July 23, 2010) ("When the validity of a contract or a right to property is called into question, in its entirety the value of the property controls the amount in controversy.") (citing *Waller v. Prof' Ins. Corp.*, 296 F.2d. 545, 547 (5th Cir. 1961)).

One of the more illustrative cases on this issue is *Mapp,* which outlined the logic underlying this rationale by examining Alabama contract law. 2009 WL 3664118, at *2. In Alabama, a mortgage conveys fee simple title subject to a condition subsequent, and a mortgagor, having made such a conveyance to the mortgagee, retains only an equity of redemption. *Id*. However, as the *Mapp* court notes, even though Alabama is a title theory state— i.e. mortgagees hold legal title— for all equitable and practical purposes the mortgagors are deemed the "owners" of the property. *Id.* at *4. Thus, a mortgagor's ownership interest in the real property is at stake in any litigation involving a challenge to the title of the mortgaged property. *Id*. Therefore, when a plaintiff seeks to invalidate a mortgage or obtain permanent injunctive relief, the best way to measure the potential benefit conferred to the plaintiff is by the total value of the home itself. *Id.; see also Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.,* 120

F.3d 216, 219 (11th Cir. 1997) ("Value of the object of the litigation is measured solely from the plaintiff's perspective.").

The court embraces the approach of *Mapp* and will look at the potential benefit to the Plaintiffs, i.e. the full value of the home, to ascertain the amount in controversy. 2009 WL 3664118 at *4. To determine the value of Plaintiffs' requested relief in the instant case, the court must look at documents present at the time of removal. *Lowery v. Ala. Power Co.,* 483 F.3d 1184,1213 (11th Cir. 2007). In that regard, the most pertinent document is the original complaint, which lists sixteen different counts. Doc. 1-1. In particular, Count 14 is the most relevant because it asserts that the mortgage at the center of this suit "is void on its face." *Id*. at ¶ 74. This allegation demonstrates why the value of the property is the appropriate way to calculate the amount in controversy in this suit— after all if the court finds for Plaintiffs on this point, Plaintiffs could be awarded the property, valued at $144,000, outright.

Plaintiffs contest this point by asserting that "they are not asking for a free house" and contend instead that only the $1100.33 escrow payment that Citi refused, plus incidental damages, which they claim can not reach $75,000, are at issue here. Doc. 12 ¶¶ 8, 9. However, since courts make amount in controversy determinations based on the claim at the time of removal, such post-removal

clarifications have no bearing on the court's assessment.[3] *Nelson*, 727 F. Supp. 2d. 1294, 1301. Thus, since Plaintiffs' complaint challenges the validity of the mortgage, the entire value of the home is at stake in this litigation and the amount in controversy requirement is met. Therefore, this court has jurisdiction of this matter.

Alternatively, the court notes that, notwithstanding its embrace of the *Mapp* approach, even if it applies the alternative methods of determining the jurisdictional amount, it would reach the same result. For example, if the court uses instead the amount on Plaintiffs' mortgage, this nets an amount in controversy of $138,852. Likewise, the temporal value of the injunctive relief sought, i.e. the setting aside the foreclosure sale, (doc. 1-1 ¶ e), supports an amount in controversy for the full value of the delay which is permanent. *See Carstarphen v. Deutsche Bank Nat'l Trust Co.,* No. 08-0511-WS-M, 2009 WL 1537861, at *5 (S.D. Ala. June 1, 2009) (The temporal scope of the injunctive relief sought is crucial to an assessment of its valuation). Moreover, this approach is more appropriate where a plaintiff seeks only injunctive relief, which is not the case here. *Mapp,* 2009 WL 3664118 at *4 ("Injunctive relief hardly establishes the amount in controversy

---

[3] Even if the court could take the post-removal clarifications into account, it would not alter the analysis because the Amended Complaint still contains claims that question the validity of the promissory note and the mortgage it secures Doc. 14 ¶¶ 49, 69.

when . . . substantive issues are in play."). Finally, the court notes that the only method that would arguably lead to a different outcome is one based on the equity Plaintiffs have in the property. However, this calculation is inappropriate here because Plaintiffs have no equity. Doc. 1 ¶ 11. In other words, none of the four methods of calculating amount in controversy, *See Brown*, 2011 WL 1059206 at *3, supports Plaintiffs' assertion that the amount in controversy is less than $75,000.

## IV.  CONCLUSION

Accordingly, Plaintiffs' Motion to Remand is **DENIED**, i.e. the court is retaining jurisdiction of this matter.  So that there is no confusion, the court **ORDERS the Plaintiffs to respond to Defendants' motion to dismiss by 5p.m. on August 16, 2011.  A failure to respond may result in a dismissal of this matter.**

**DONE** and **ORDERED** this 9th day of August, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE