# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RUSSELL SCIVALLY** and **ANGIE SCIVALLY,** | )<br>)<br>) |
| Plaintiffs, | ) |
| | ) Civil Action Number |
| vs. | ) **5:11-cv-1452-AKK** |
| | ) |
| **CITIMORTGAGE, INC., et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants CitiMortgage, Inc., Mortgage Electronic Registration Systems, and Kim Krakoviak's ("Defendants") Motion to Dismiss. Doc. 16. For good cause shown and for reasons stated more fully below, Defendant's Motion to Dismiss is **GRANTED**.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Defendants initially filed a motion to dismiss on May 5, 2011. Doc. 5. The court denied the first motion to dismiss without prejudice to give *pro se* Plaintiffs, who filed their action in Alabama state court, an opportunity to comply with federal pleading standards. *See* doc. 10. Plaintiffs subsequently filed a Motion to Remand, doc. 12, and an Amended Complaint, doc. 14. The court denied

1

Plaintiffs' motion to remand, doc. 20, and encouraged Plaintiffs to respond to Defendants' second motion to dismiss, doc. 16, even *sua sponte* extending the deadline for Plaintiffs' response.  Plaintiffs responded, doc. 22, and Defendants replied, doc. 25.

Plaintiffs assert ten state law claims that arise from a loan agreement between Plaintiffs and Consumer First Mortgage, Inc. ("Consumer First") entered into on February 9, 2007.  Doc. 14 ¶ 5.  The mortgage gave Consumer First a security interest in Plaintiffs' property, located at 365 County Road 26, Scottsboro, Alabama.  Doc. 1-1, at 18.  This mortgage agreement provided that Mortgage Electronic Registration Systems, Inc. ("MERS") was the "Mortgagee" of the security instrument and the "nominee" for Lender, Consumer First.  *See id*.  Sometime after Plaintiffs and Consumer First reached this agreement, Kim Krakoviak, assistant secretary of MERS, transferred Consumer First's security interest to CitiMortgage, Inc. ("Citi").  Doc. 14 ¶ 11.  Subsequently, Citi removed funds from Plaintiffs' escrow account to purchase additional flood insurance on the property against Plaintiffs' wishes.  Doc. 14 ¶ 8.  In February 2011, Citi instituted foreclosure proceedings against Plaintiffs.  Doc. 14 ¶ 11.[1]

---

[1] The Amended Complaint nor the Responsive Briefs provide the court with the justifications for foreclosure of the property in question.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also*

*Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

Because Plaintiffs proceed in this case *pro se* – that is, without an attorney – the court must construe their pleadings liberally. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citation omitted). "[T]his leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Indeed, "[o]nce a *pro se* litigant is in court, he is subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dep't of Corr.*, 369 F. App'x 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). Therefore, while the court construes Plaintiffs' pleadings liberally and affords them significant leniency in light of their *pro se* status, the court may not wholly disregard the federal pleading standards and standard of review. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *see also Smith*, 369 F. App'x at 38.

### III. ANALYSIS

For the reasons explained below, the court **GRANTS** Defendants' motion to dismiss. While Plaintiffs attempted to comply with federal pleading standards in their Amended Complaint, they still fail to satisfy the pleading requirements provided by *Iqbal*. The court addresses the specific reasons for the failure of each individual claim, but it notes two significant problems that permeate the Amended Complaint.

First, even though Plaintiffs receive a more liberal pleading standard as *pro se* litigants, many of their alleged claims never create "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Indeed, Plaintiffs' claims generally provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," if that, and therefore, the Amended Complaint "has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing FED. R. CIV. P. 8(a)(2)).

Second, Plaintiffs assert that MERS did not have the authority to assign the current mortgage to Citi. *See* Doc. 14 ¶¶ 33, 69, 70; Doc. 22 ¶¶ 7, 8. However, Alabama law provides in fact that, given certain contractual language in a mortgage, MERS has the authority to assign a mortgage to another entity. *See Crum v. LaSalle Bank, N.A.*, 55 So. 3d 266 (Ala. Civ. App. 2009); *Fed. Nat'l Mortg. Ass'n v. Nelson*, CV-2010-900390, at *3 (Jan. 18, 2011 Ala. Cir. Ct.). In

*Crum*, the court analyzed identical mortgage language[2] and concluded that "MERS was . . . expressly acknowledged by the borrower in the mortgage instrument itself as not only having 'any or all of [the lender's] interests' in the mortgaged property, but also as having the power 'to take any action required of' the lender." 55 So. 3d at 269. As such, "MERS was authorized to perform any act on the lender's behalf as to the property, including selling the note and the mortgage to a third party." *Id.*[3] Significantly, in this case, Plaintiffs base numerous claims on the erroneous legal conclusion that the assignment from MERS to Citi was invalid.

---

[2] Both mortgage agreements provided that MERS was the "nominee for Lender" and the "Mortgagee" of the Security Instrument. Doc. 1-1, at 18; *Crum*, 55 So. 3d at 267-68. Moreover, both mortgage agreements stated that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successor and assigns of MERS, with power of sale, the following described property . . ." *Id.* Finally, both mortgage agreements stated:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender including, but not limited to, releasing or cancelling this Security Instrument.

*Id.*

[3] Plaintiffs provide some authority from other jurisdictions supporting their position that MERS cannot assign the mortgage as a "nominee" of the lender. Doc. 14 ¶ 33 (citing *LaSalle Bank Nat'l Ass'n v. Lamy*, No. 030049/2005, 2006 WL 2251721 (Aug. 7, 2006 N.Y. Sup. Ct.)). However, this case is governed by Alabama law, *see Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009) (holding that Alabama follows the traditional *lex loci contractus* [place of contracting] and *lex loci delicti* [place of injury] choice of law principles), and *Crum* establishes that under Alabama law, MERS may validly assign the rights of the original lender to a third party. 55 So. 3d at 269.

Yet, in adherence to Alabama law, the assignment of the mortgage from MERS, as nominee of Consumer First, to Citi, was a legally valid assignment.  Therefore, any allegation that is rooted in the notion that MERS' assignment was illegal cannot form the basis for a cognizable claim under Alabama law and must be dismissed with prejudice.

### A. Plaintiffs Fail to State a Claim for Negligence

To prove negligence under Alabama law, a plaintiff must show "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *Dibiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008).  Plaintiffs' first two allegations under their negligence claim, doc. 14 ¶¶ 16, 17, merely provide "'naked assertion[s]'" of negligence "devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp.*, 550 U.S. at 557). Without such factual enhancement regarding a right to relief for common law negligence, Plaintiffs' conclusory statements cannot survive Defendants' motion to dismiss for failure to state a claim.

Moreover, even if taken as true, Plaintiffs' factual allegations regarding the purchase of additional flood insurance, doc. 14 ¶ 18, do not allow the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Plaintiffs fail to sufficiently indicate what prohibited Citi from purchasing the flood insurance and what authority, if any,

Plaintiffs possessed to object to such purchase.  Similarly, Plaintiffs assert that Citi presented itself as holding and owning the mortgage prior to the assignment by MERS, doc. 14, ¶¶ 19-20, yet this allegation is also "naked" and completely devoid of factual enhancement that could lead the court to infer a potential claim for common law negligence.  *See Iqbal*, 129 S. Ct. at 1949.  Accordingly, the court dismisses the negligence claim.

### B. Plaintiffs Fail to State a Claim for Wantonness

Wantonness is "conduct which is carried on with reckless or conscious disregard for the rights or safety of others."  *Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1371 (N.D. Ala. 2008).  Plaintiffs claim that Defendants were wanton in their institution of the foreclosure sale. Doc. 14 ¶ 18.[4]  Yet, Plaintiffs make no demonstration that the foreclosure sale was wrongful, let alone wanton.  Instead, Plaintiffs reassert their allegations regarding the supposedly improper purchase of flood insurance, *id.* at 19, but offer no indication of why that was illegal.  In their Response Brief, *see* doc. 22 ¶ 6, Plaintiffs attempt to remedy this deficiency by arguing that the purchase of flood insurance "is actually a TILA violation."  *Id.*  Significantly though, the Amended Complaint does not purport to state any federal claims, including a Truth in Lending Act ("TILA") violation, as evidenced by Plaintiffs' concurrent motion to remand, doc. 12.

---

[4] Plaintiffs' Amended Complaint, doc. 14, duplicates the numbering of paragraphs.  For section III.B. of this Memorandum Opinion, the court refers to the paragraphs in "Count Two Wantonness" of doc. 14.

Finally, Plaintiffs claim that Citi refused to accept a payment on the mortgage. Doc. 14 ¶ 20. Assuming this factual allegation is true, Plaintiffs offer no indication why such refusal violated Alabama law. Though the court provides some leniency to Plaintiffs as *pro se* litigants, "this leniency does not give [the] court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs.*, 132 F.3d at 1369. The court is not given enough factual matter from the Plaintiffs' pleadings that could sustain a plausible cause of action for wantonness against Defendants. Accordingly, the court dismisses the wantonness claim.

**C. Plaintiffs Fail to State a Claim for Unjust Enrichment**

Plaintiffs' Amended Complaint merely provides a "formulaic recitation of the elements of [this] cause of action." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotations marks omitted). Simply stated, Plaintiffs circuitously allege a cause of action for unjust enrichment because Citi was "unjustly enriched." Specifically, they claim that the "actions of Citi in foreclosing on the home of Plaintiffs in violation of the law resulted in Citi being unjustly enriched" and that "Citi is guilty of trying to 'not accept' payment in order to unjustly enrich themselves." Doc. 14 ¶¶ 25, 27. These assertions of unjust behavior are mere legal conclusions that do not receive a presumption of truth. The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Accordingly, the court dismisses the unjust enrichment claim.

### D. Plaintiffs Fail to State a Claim for Wrongful Foreclosure

The underlying basis for Plaintiffs' claim that Citi initiated an illegal foreclosure is that MERS could not make a valid assignment of the mortgage to Citi. *See* doc. 14 ¶ 33. As provided *supra*, Alabama law recognizes as valid the assignment by MERS to Citi. *See Crum*, 55 So. 3d at 269. Even assuming all factual claims are true, Plaintiffs fail to provide a sufficient legal basis for their wrongful foreclosure claim.[5] Accordingly, the court dismisses the wrongful foreclosure claim.

### E. Plaintiffs Fail to State a Claim for Slander of Title

Plaintiffs claim for slander of title is premised on a wrongful foreclosure initiated by Citi. *See* doc. 14 ¶ 41 ("Citi, in filing a foreclosure (which is void) have caused a cloud to be placed on the title of the property of Plaintiffs."). In other words, Plaintiffs' claims of "false statements concerning title," doc. 14 ¶ 40, are grounded in their contentions regarding an invalid foreclosure sale by Citi. However, as stated previously, Plaintiffs' attempt to demonstrate a wrongful foreclosure fails under Alabama law because MERS validly assigned the mortgage

---

[5] In their Response Brief, doc. 22 ¶ 8, Plaintiffs request to view the original promissory note. While not plead in their Amended Complaint, Defendants correctly assert that "had pleaded facts [been] allege[d] that they were entitled to review the original note prior to foreclosure, such a claim still would be invalid and would need to be dismissed." Doc. 25, at 7 (citing *Farkas v. SunTrust Mortg., Inc.*, No. 10-0512-CG-M, 2010 WL 552539, at *4 (S.D. Ala. Dec. 15, 2010), *report and recommendation adopted*, 2011 WL 39048 (S.D. Ala.. Jan. 5, 2011)). In *Farkas*, the court held that, as a non-judicial foreclosure state, Alabama's foreclosure procedures do not require the foreclosing party to "show the note" or, put differently, to "demonstrate ownership of the mortgage note before taking any action against" mortgagor. *Id.*

to Citi.  *See Crum*, 55 So. 3d at 269.  Without sufficient allegations of a wrongful foreclosure, Plaintiffs cannot establish even "a sheer possibility that a defendant has acted unlawfully" by slandering title to the property in question.  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, the court dismisses the slander of title claim.

### F. Plaintiffs Fail to State a Claim for Breach of Contract

The breach of contract claim alleges that Defendant Citi refused to accept Plaintiffs' payment on the mortgage note.  Doc. 14 ¶ 44.  Plaintiffs again make a "naked assertion" that lacks factual enhancement.  *Iqbal*, 129 S. Ct. at 1949.  The court is unable to "draw the reasonable inference" of how Defendants could plausibly be liable for this alleged breach.  *Id.*  Plaintiffs provide no guidance to the contractual provisions breached, and the court may not "serve as de facto counsel" to find these supposed breached provisions.  *See GJR Invs.*, 132 F.3d at 1369.  Accordingly, the court dismisses the breach of contract claim.

### G. Plaintiffs Fail to State a Claim for Fraud

Defendants correctly maintain that "Plaintiffs' allegations regarding letters and notices sent between the parties do not indicate why those communications are actionable."  Doc. 16, at 10.  Plaintiffs reference three documents in their fraud allegation: (1) a February 23, 2011 letter from Citi regarding the time to dispute the debt before it is assumed valid; (2) the Notice of Dispute filed by Plaintiffs; and (3) foreclosure notices that began to run on March 8, 2011.  *See* doc. 14 ¶ 47.  The allegations of fraud presumably arise because the foreclosure notices began to run prior to the expiration of the 30 days that Plaintiffs could dispute the validity

of the debt.[6]  However, Plaintiffs offer no factual allegations of a misrepresentation - beyond mere conclusory statements.  As provided by the Amended Complaint, *id.*, the February 23, 2011 letter from Citi stated "[u]nless you dispute the validity of the debt or any part thereof within 30 days after receipt of this letter, *the debt will be assumed to be valid*." *Id.* (emphasis added).  Based on the language provided by Plaintiffs, this letter from Citi pertains to *presumptions of validity* regarding the debt in question, rather than the use of foreclosure notices by Citi.  Therefore, the court finds no facial misrepresentations in Plaintiffs' pleadings.  Because Plaintiffs do not provide more than a sheer possibility of misrepresentations, if that, the court cannot reasonably infer a valid cause of action for fraud that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

Moreover, Plaintiffs also fail to meet the Fed. R. Civ. P. 9(b) heightened pleading standard for fraud that requires them to "state with particularity the circumstances constituting fraud . . . ."  Accordingly, the court dismisses the fraud claim.

**H. Plaintiffs Fail to State a Claim for Invasion of Privacy by Intrusion Upon Seclusion**

As it relates to this claim, the Amended Complaint offers only one factual allegation that is not a legal conclusion.  Specifically, Plaintiffs assert that "Citi contracted and sent two people, (to be subpoenaed later), to take pictures of

---

[6] The court takes liberty to concisely formulate *pro se* Plaintiffs' vague allegations of fraud.

Plaintiffs[sic] private assets and personal belongings without permission." Doc. 14 ¶ 63. Plaintiffs contend that the taking of these photographs intruded on their seclusion. Alabama law recognizes the tort of invasion of privacy by "the intrusion upon the plaintiff's physical solitude or seclusion." *I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d 685, 689 (Ala. 2000) (citations omitted). "The conduct supporting a cause of action for invasion of privacy in the context of debtor-creditor relations involves the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hart v. Gen. Motors Acceptance Corp.*, 437 So. 2d 1255, 1256 (Ala. 1983) (citations and quotations marks omitted). Moreover, there is "no liability for photographing a person in a public place. However, an exception to that general rule is where the photographs constitute an intrusion into matters that the person intends not to be 'exhibited to the public gaze.'" *Key v. Compass Bank, Inc.*, 826 So. 2d 159, 165 (Ala. Civ. App. 2001) (citing *Schifano v. Greene Cnty. Greyhound Park*, 624 So.2d 178, 180 (Ala. 1993)).

Here, Plaintiffs make no factual assertions that the photographs were taken in a private place or of items that were restricted from the public gaze. *See Key*, 826 So. 2d at 165. Moreover, Plaintiffs provide no factual allegations of "outrage or . . . mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hart*, 437 So. 2d at 1256. Indeed, "[f]acts that are merely consistent with the plaintiff's legal theory will not suffice when, without some further factual

13

enhancement [they] stop short of the line between possibility and plausibility of 'entitlement to relief.'" *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007)(citing *Bell Atl. Corp.*, 550 U.S. at 557). A claim for invasion of privacy by intrusion is not plausible where Plaintiffs assert only that Citi took photos of their things, not of their persons, and fail to assert any offensive manner in which Citi took the photos. *See Bell Atl. Corp.*, 550 U.S. at 570. Accordingly, the court dismisses the invasion of privacy by intrusion of seclusion claim.

### I. Plaintiffs Fail to State a Claim for Void Contract

Plaintiffs' ninth allegation does not state a claim upon which relief can be granted because it is a derivation of their wrongful foreclosure claim. Plaintiffs plead that the mortgage contract at issue is facially void because MERS is listed as the Mortgagee. For the reasons stated *supra*, MERS legitimately operates as mortgagee of the mortgage agreement and the mortgage contract is not void. *See Crum* 55 So. 3d at 269. Moreover, Plaintiffs offer no factual support for their allegation that the mortgage contract lacks consideration. Accordingly, the court dismisses the "void contract" claim.

### J. Plaintiffs Fail to State a Claim for Deceptive Trade Practices

Although not stated specifically, Plaintiffs are purportedly claiming that Defendants violated Alabama's Deceptive Trade Practices Act ("ADTPA"). *See* ALA. CODE §§ 8-19-1 et. seq. (1975). Plaintiffs offer no further indication of how Defendants violated the ADTPA and fail to indicate the basis for any available

remedy under the ADTPA. Assuming, therefore, that Plaintiffs bring this claim under the catchall provision of the ADTPA, which states that a "deceptive trade practice" includes "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," ALA. CODE § 8-19-5, their claim still fails to sufficiently state a claim. Taking Plaintiffs' allegations as true - that Citi "removed monies from an escrow account to purchase flood insurance," doc. 14 ¶ 73 - Plaintiffs do not demonstrate any form of unconscionable, false, misleading, or deceptive act. There is no indication of why Citi was prohibited from removing escrow monies to purchase such insurance; and without more, the court cannot ascertain any plausible violation of the ADTPA. Accordingly, the court dismisses the claim for deceptive trade practices.

## IV. CONCLUSION

When reviewed in the light most favorable to them, Plaintiffs' claims fall significantly short of the low threshold set by *Iqbal* and *Bell Atlantic*. To allow these claims to proceed would be fundamentally unfair to the Defendants, and it would require the court to engage in impermissible speculation and guesswork regarding both the facts and the harms alleged. To the extent that Plaintiffs' claims fail to sufficiently state a right to relief, they are dismissed without prejudice. However, the claims premised on the erroneous legal theory regarding MERS' assignment to Citi are dismissed with prejudice. For the reasons stated above, the court **GRANTS** Defendants' Motion to Dismiss in its entirety, with costs taxed as paid.

**DONE** this 12th day of September, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE